**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| JOHN F. HARRIS,           § | |
|     PLAINTIFF,       § | |
| § | |
| VS.                       § | CIVIL ACTION NO. 4:04-CV-850-Y |
| § | |
| JO ANNE B. BARNHART,      § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
|     DEFENDANT.       § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.  STATEMENT OF THE CASE

Plaintiff John F. Harris brings this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for disability benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Harris applied for SSI benefits and disability insurance benefits on March 28, 2002, alleging he has been disabled since July 30, 2000. (Tr. 223, 228). He met the requirements for disability insured status at all times relevant to the administrative decision. (Tr. 175).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 1**

After the Social Security Administration denied his applications for benefits initially and on reconsideration, Harris requested a hearing before an administrative law judge (the "ALJ"), and ALJ Jimmy N. Coffman held a hearing on July 31, 2003 in Fort Worth, Texas. (Tr. 32-43). Harris was represented by counsel. On August 26, 2003, the ALJ issued a decision that Harris was not entitled to disability or SSI benefits because he retained the residual functional capacity to perform his past relevant work as a janitor. (Tr. 13-17). The Appeals Council denied Coffman's request for review of his case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 3).

B.     STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is severe if it has more than minimal effect on the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 2**

*Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.*

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 3**

This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUES

Whether the ALJ's decision is supported by substantial evidence.

D.  ADMINISTRATIVE RECORD

1.  Medical History[1]

Harris has a history of back pain radiating into his right leg. (Tr. 115). Magnetic resonance imaging (an MRI) performed in 2001 revealed a bulging disc at L5-S1, and x-rays showed mild to moderate degenerative changes at this level. (Tr. 113, 119). Harris agreed to surgery after conservative treatment measures, including pain medication and physical therapy, failed to provide significant relief. (Tr. 117).

On May 20, 2002, surgeon Mark Dalton performed an anterior L5-S1 diskectomy[2] and fusion. (Tr. 131-33). Surgery, however, failed to relieve Harris's symptoms. In December 2002, Harris reported that his back pain was worse in his back and right leg. A second MRI performed January 22, 2003 showed normal lumbar spine alignment and mild disc bulges at L4-L5 and L5-S1 with bilateral severe foraminal stenosis. (Tr. 197). A computed tomography (CT) scan was

---

[1] A review of the medical records is abbreviated because Harris challenges the ALJ's determination that Harris's residual functional capacity (RFC) was compatible with his previous work as a janitor, but Harris does not challenge the RFC assessment itself.

[2] A diskectomy is excision of an intervertebral disk. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 526 (29th ed. 2000).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 4**

performed in February 2003 and demonstrated satisfactory alignment at L5-S1.  There was a mild disc bulge at L4-L5, and a broad-based disc bulge at L5-S1.  (Tr. 190).

In addition to back problems, Harris has a longstanding seizure disorder that began when he was a teenager. (Tr. 41, 146).  In July 2002, Harris reported two to three seizures each week despite taking the medication Tegretol.  He was given a prescription for Neurontin, and during his follow-up visit on August 30, 2002, reported only one seizure since beginning the new medication.  (Tr. 151).

Harris saw his neurologist, Stephen Hurlburt, on September 17, 2002.  (Tr. 146).  Harris reported having a seizure three days earlier and thought that his seizures were becoming more frequent.  He reported that his seizures usually occurred at night, and he would awaken in the morning feeling sore or with a bitten tongue.  A computed tomography (CT) scan of his brain failed to show any abnormalities.  Harris's medications included Vicodin, Neurontin, and Tegretol. Hurlburt assessed partial complex seizures, primarily nocturnal.  (Tr. 146).

On December 3, 2002, Harris advised Hurlburt that he continued to have nocturnal seizures. Harris was also feeling depressed.  He had tried the anti-depressant Zoloft, but discontinued it because of side-effects.  (Tr. 186).  In June 2003, Harris reported that his seizures were more frequent since he had been involved in a recent car accident and were occurring three times per week. (Tr. 187).  Harris also complained of feeling depressed.  (Tr. 187).

2. Administrative Hearing

Harris testified that he was born January 29, 1964.  (Tr. 34).  He completed high school and most recently worked as a groundskeeper and janitor.  (Tr. 35).  Harris testified that his job duties had required him to stand most of the day and lift up to fifty pounds.  Harris had also worked as a

sprinkler system installer and as a museum janitor. (Tr. 35-36). He testified that his museum job duties had included transferring animals among the exhibits, and he had lifted up to seventy-five pounds at a time for that job. Harris had also worked on an assembly line for a flatbed trailer manufacturer. (Tr. 36).

Harris testified that surgery had not relieved his back pain. He described low back pain that radiated into his legs and feet. The pain restricted his ability to sit and caused muscle spasms. (Tr. 38). In addition, he continued to have nocturnal seizures two or three times a week that sometimes caused him to fall out of bed, which was one of the reasons he had back problems. (Tr. 38-39). Harris testified that it took him a day or more to recuperate after a seizure. Harris testified that he was depressed, especially about his dependence on his parents, and he had problems with his concentration and memory. (Tr. 40-41).

3.   ALJ Decision

The ALJ found that Harris has not engaged in substantial gainful activity since his alleged onset date and had a severe combination of impairments in view of his back problems and seizure disorder. (Tr. 14). The ALJ found no impairment or combination of impairments that met or medically equaled any listed impairment. After reviewing the objective evidence and Harris's subjective complaints, the ALJ concluded that Harris retained the residual functional capacity for the full range of light exertional work, except he required seizure precautions. (Tr. 16). The ALJ noted that this assessment was consistent with the opinions of the state agency medical consultants who reviewed the medical evidence at the initial and reconsideration levels of review. (Tr. 16). The ALJ further found that Harris's previous janitorial work had required sedentary exertion and

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 6**

did not exceed Harris's given residual functional capacity. (Tr. 16-17). Accordingly, Harris was not considered disabled or entitled to SSI or disability insurance benefits.

D.      DISCUSSION

Harris asserts that the ALJ's determination that he can return to his previous work as a janitor is unsupported by substantial evidence. Harris asserts that the ALJ erroneously identified janitorial work as sedentary and failed to explain how the job of janitor was appropriate for a worker who must take seizure precautions.

In deciding whether a claimant can return to her past relevant work, an ALJ must make findings of fact regarding the claimant's remaining residual functional capacity (RFC) and the physical and mental demands of past relevant work, then the ALJ must compare the two. *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994). SOCIAL SECURITY RULING 82-62. The term "past relevant work" in the context of disability and supplemental security is defined as either (1) the actual functional demands and job duties of a particular past relevant job, or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SOCIAL SECURITY RULING 82-61. *See also Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

Social Security Ruling 82-62 considers the claimant to be the primary source for vocational documentation of past work, and the claimant's statements are generally considered sufficient for determining skill level, exertional demands, and nonexertional demands of past work. Ruling 82-62 also contemplates acquiring supplementary or corroborative information from other sources, such as employers or the Dictionary of Occupational Titles (DOT), regarding the requirements of the

work as generally performed nationwide. SOCIAL SECURITY RULING 82-62. For situations where available documentation and vocational resource materials are insufficient to determine how a particular job is usually performed, it may be necessary to obtain the services of a vocational expert. SOCIAL SECURITY RULING 82-61. The ALJ has a duty to sufficiently develop the record, but the claimant has the burden at Step Four to prove an inability to perform past relevant work. *Villa*, 895 F.2d at 1023.

Harris asserts that the ALJ erroneously identified the job of janitor as sedentary work. (Tr. 16). The ALJ did state that Harris's previous work as a janitor was a sedentary position and referred to paperwork that Harris submitted in support of his benefit applications. In his Work History Report, Harris reported that he had worked as a janitor for North Texas Steel. (Tr. 67). He indicated that his duties required him to walk around the plant, sweep, and clean the rest rooms and break rooms. Harris also reported that he lifted up to ten pounds at a time and walked or stood most of the day, but used no machines, tools or equipment. (Tr. 68).

The ALJ erred in identifying Harris's janitorial work as sedentary even though the job required lifting little weight. Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a). A sedentary job contemplates sitting for about six hours during a standard eight-hour work day, and standing or walking for about two hours during the work day. *Id.*; SOCIAL SECURITY RULING 96-9p. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 8**

it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

The Commissioner concedes that the walking requirements of Harris's previous janitorial job, as Harris described it, exceed those of sedentary work. However, the Commissioner urges that the error caused no substantial prejudice and does not present grounds for disturbing the administrative decision because Harris's description of his work falls within the parameters of light work and is consistent with his RFC as found by the ALJ. *See Brock v. Chater,* 84 F.3d 726, 728 -729 (5th Cir. 1996)(declining to reverse administrative decision based on lack of substantial evidence where claimant makes no showing that he was prejudiced by the deficiencies alleged).

Harris contends that his testimony during the administrative hearing establishes that his janitorial work actually required medium exertion, notwithstanding the forms he previously completed as part of the application process. Harris also notes that the DOT identifies janitorial work as requiring medium exertion. *See generally* Dictionary of Occupational Titles § 382.664-010 (rev. 4th ed. 1991). Harris urges that the ALJ had no basis for finding that the information Harris provided on the administrative forms was more accurate than Harris's subsequent testimony.

A review of the administrative hearing, however, fails to demonstrate a clear conflict in the evidence. At the hearing, Harris testified that he had worked at several companies as a janitor and described his various job duties at some of those companies,[3] but Harris did not testify about his specific duties as a janitor at North Texas Steel and provided no testimony that contradicts his

---

[3] Harris testified that he had most recently worked as a groundskeeper and janitor for Wilson's Decoration Service, (Tr. 35), and had also worked as a janitor for the Fort Worth Museum of Science. (Tr. 36).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 9**

written statements about the work requirements of that particular job. Moreover, conflicts in the evidence are resolved by the ALJ, not the court. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). It is the province of the ALJ to determine credibility, and Harris has not shown that the ALJ abused his discretion in relying on Harris's written description of his work for North Texas Steel. Although the ALJ erred in classifying Harris's work as sedentary, the error was not prejudicial in light of Harris's RFC for light work.

Harris asserts that, even if the exertional level of his previous work is compatible with his RFC, the ALJ had no basis for finding that his previous work was suitable for a person requiring seizure precautions. Harris notes that the DOT description of work as a janitor includes the following duties:

> Keeps hotel, office building, apartment house, or similar building in clean and orderly condition and tends furnace, air-conditioner, and boiler to provide heat, cool air, and hot water for tenants, performing any combination of following duties: Sweeps, mops, scrubs, and vacuums hallways, stairs and office space. Regulates flow of fuel into automatic furnace or shovels coal into hand-fired furnace. Empties tenants' trash and garbage containers. Maintains building, performing minor and routine painting, plumbing, electrical wiring, and other related maintenance activities, using hand tools. Replaces air-conditioner filters. Cautions tenants regarding complaints about excessive noise, disorderly conduct, or misuse of property. Notifies management concerning need for major repairs or additions to lighting, heating, and ventilating equipment. Cleans snow and debris from sidewalk. Mows lawn, trims shrubbery, and cultivates flowers, using hand tools and power tools.

Dictionary of Occupational Titles § 382.664-010 (rev. 4th ed. 1991). Harris asserts that tending to dangerous equipment, climbing ladders or scaffolds, or using hand tools or power tools are not tasks suitable for a person who must take seizure precautions.

The ALJ, however, did not rely on the DOT description of a janitor's duties. The ALJ relied

on Harris's statements about his job duties as a janitor at North Texas Steel. (Tr. 16-17). Harris reported that his work had not required him to use machines, tools or equipment. (Tr. 68). He also indicated that he had to walk or stand most of the day, but no climbing had been required. (Tr. 68). The substantial evidence supports the ALJ's determination that Harris's previous work as a janitor, as he performed that job at North Texas Steel, is compatible with light work activity and Harris's need to take seizure precautions.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until November 15, 2005. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal

conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until November 15, 2005 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED OCTOBER 25, 2005.

/s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE